IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VERONICA R. GOODE | * | |
| v. | * | Civil Case No. PX-17-833 |
| COMMISSIONER, SOCIAL SECURITY[1] | * | |

*************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF NO. 3]. I have considered the parties' cross-motions for summary judgment and the accompanying memoranda. [ECF Nos. 18, 21]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Social Security Administration ("SSA") if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the Court deny both motions, reverse the SSA's decision in part, and remand the case to the SSA for further proceedings in accordance with this report and recommendations.

Ms. Goode applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on September 27, 2011, alleging a disability onset date of September

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

13, 2010.[2] (Tr. 152-53, 154-59); *see also* (Tr. 30). Her application was denied initially on December 7, 2011, and on reconsideration on October 31, 2013. (Tr. 62-68, 70-79, 81-84, 91-92). An Administrative Law Judge ("ALJ") held a hearing on September 16, 2015, at which Ms. Goode was represented by counsel. (Tr. 28-57). Following the hearing, the ALJ determined that Ms. Goode was not disabled within the meaning of the Social Security Act prior to September 16, 2014. (Tr. 11-27). On February 7, 2017, the Appeals Council granted Ms. Goode's request for review. (Tr. 1-8). After reviewing the record, the Appeals Council dismissed Ms. Goode's "request for hearing dealing with the period on or before April 21, 2011, the date of the previous ALJ decision; adopt[ed] the finding that [Ms. Goode] was not disabled from April 22, 2011 to September 15, 2014; and affirm[ed] the finding that [Ms. Goode] is disabled from September 16, 2014 through November 10, 2015 . . . ." (Tr. 5-6). The Appeals Council's decision constitutes the final, reviewable decision of the Agency.[3]

The ALJ found that Ms. Goode suffered from the severe impairments of "residual of reconstructive surgery of weight bearing joint (right knee), spine disorder, obesity, asthma, and affective disorder." (Tr. 17). Despite these impairments, the ALJ determined that Ms. Goode retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she should not be required to stand more than thirty minutes before alternating to sitting for thirty minutes as she performs the work activity. She should do no climbing of ropes, ladders, or scaffolds but can perform other postural movements such as stooping

---

[2] Notably, the record in the instant case references several different alleged onset dates. *See, e.g.*, (Tr. 15, 17) (ALJ's 2015 decision, stating that the alleged onset date was May 13, 2008); (Tr. 30) (September 16, 2015 administrative hearing transcript, indicating that Ms. Goode's counsel stated that the alleged onset date was September 13, 2010); (Tr. 53) (September 16, 2015 administrative hearing transcript, in which the ALJ noted that Ms. Goode "wishe[d] to have her alleged onset date of September 30, 2010 remain to be the date"); (Tr. 156) (Ms. Goode's Disability Insurance Benefits application, in which she alleged a disability onset date of September 13, 2010). For the purposes of this recommendation, I will reference the alleged onset date of September 13, 2010, which was set forth in Ms. Goode's application for benefits and referenced during the administrative hearing.

[3] While the Appeals Council's decision is the final administrative decision in this case, Ms. Goode's argument focuses on the ALJ's 2015 decision, which was adopted in part by the Appeals Council.

on an occasional basis. She should do no work around dangerous machinery or unprotected heights and should avoid concentrated exposure to environmental pollutants. She is precluded from performing complex tasks and, due to concentration and focus problems, would be off task for five percent of the workday.

(Tr. 19). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Goode could perform jobs existing in significant numbers in the national economy, and that, therefore, she was not disabled prior to September 16, 2014. (Tr. 22-23).

On appeal, Ms. Goode raises two arguments, including that: (1) the ALJ erroneously assessed Ms. Goode's RFC; and (2) the ALJ erroneously evaluated Ms. Goode's mental impairment. Pl. Mot. 3-8. I agree that the ALJ's RFC analysis was inadequate and, therefore, I recommend remand. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Goode is not entitled to benefits prior to September 16, 2014 is correct.

First, Ms. Goode contends that the ALJ "failed to provide adequate explanation to support the limitations assessed in his [RFC] assessment." *Id.* at 8. Specifically, Ms. Goode argues that the ALJ "did not explain, and in fact made no attempt to explain how he arrived at his conclusions that [Ms. Goode] . . . would be precluded from performing complex tasks, and due to focus and concentration problems, may be off task five percent of the work day." *Id.* at 6.

In *Mascio v. Colvin*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d 632, 638 (4th Cir. 2015). At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists

3

of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1620a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three functional areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1620a(c)(4). To satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.*

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the

VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

In the instant case, the ALJ found Ms. Goode to have "moderate" difficulties in maintaining concentration, persistence, or pace. (Tr. 18). The ALJ's analysis stated:

> These [medical] records also show that her concentration and attention can vary anywhere from "good" to "poor," with it generally being rated no higher than "fair." Considering this in combination with her persistent complaints of pain, discussed in more detail below, a finding that her concentration, persistence, or pace is moderately impaired is appropriate.

(Tr. 18-19) (internal citations omitted). Additionally, the ALJ noted that Ms. Goode "has had documented variances in concentration and attention, as well as notable irritation at times." (Tr. 21). However, the ALJ next observed that Ms. Goode "has had some success with medication management, and overall her symptoms have been mild." *Id.* The ALJ subsequently concluded

5

that Ms. Goode "should not be expected to perform complex tasks. . . . [and] should be expected to be off task for around five percent of each day." *Id.*

According to 20 C.F.R. § 404.1520a(c)(2), the rating of "moderate difficulties" is supposed to represent the result of application of the following technique:

> We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.

20 C.F.R. § 404.1520a(c)(2). Once the technique has been applied, the ALJ is supposed to include the results in the opinion as follows:

> At the [ALJ] hearing and [AC] levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

*Id.* § 404.1520a(e)(4).

The analysis provided by the ALJ in the instant case fails to fulfill these requirements. The ALJ's discussion of the mental health issues is short and does not reconcile the "documented variances in concentration and attention" with the statement that "overall her symptoms have been mild." (Tr. 21). Without further explanation, I am unable to ascertain whether the ALJ truly believed that Ms. Goode had moderate difficulties in concentration, persistence, or pace, instead of mild or no difficulties, and how those difficulties restrict her "from performing complex tasks and, . . . [require her to] be off task for five percent of the workday." (Tr. 19). Indeed, the ALJ's analysis entirely fails to address Ms. Goode's pace. In light of this inadequacy, I must recommend remand the case to the SSA for further analysis consistent with

6

the Fourth Circuit's mandate in *Mascio*. On remand, the ALJ should consider the appropriate level of limitation in the area of concentration, persistence, or pace and, if a moderate limitation is again found, should explain the reasons for that finding in order to permit an adequate evaluation of the limitation.

Second, Ms. Goode argues that the ALJ "failed to properly evaluate evidence of the severity of [her] mental impairment, as well as the side effects of her medication." Pl. Mot. 8. Because I am recommending remand on other grounds, I need not reach the merits of those contentions. On remand, the ALJ should assess the evidence related to Ms. Goode's mental impairment, including the side effects of her medication, and support his determination with substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment [ECF No. 21];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 18];

3. the Court REVERSE IN PART the SSA's decision under sentence four; and

4. the Court order the Clerk to REMAND the case to the SSA for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de*

*novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated:  June 15, 2018                                      /s/
                                                                          Stephanie A. Gallagher
                                                                          United States Magistrate Judge